Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:	702/720-3370
Facsimile:	702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

**Electronically Filed On: August 31, 2023**

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MONEYLINE ANALYTICS, LLC,<br><br>Debtor. | Case No. BK-S-21-12443-NMC<br>Chapter 7 |
| SHELLEY D. KROHN, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT SCHUERGER, an Individual; DOE Individuals 1-10; and ROE corporations 1-10,<br><br>Defendants. | Adv. Proc. No. _____<br><br>**COMPLAINT FOR: (1) AVOIDANCE OF FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. § 544(B) AND NRS CHAPTER 112.180(1)(A); (2) AVOIDANCE OF FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. § 544(B) AND NRS CHAPTER 112.180(1)(B); (3) RECOVERY OF FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. § 550; AND (4) DECLARATORY RELIEF PURSUANT TO N.R.S. §§ 30.010-160 AND N.R.S. § 86.343**<br><br>Judge: Honorable Natalie M. Cox |

Shelley D. Krohn (alternatively, the "Plaintiff" or "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case and plaintiff in the above-captioned adversary proceeding, by and through her counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., complains and alleges the following on information and belief against Robert Schuerger (the "Defendant"):

. . .

-1-

### I. JURISDICTIONAL ALLEGATIONS

1. This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.[1]

2. This adversary proceeding arises out of and is related to the above-captioned Chapter 7 case before the United States Bankruptcy Court (the "Bankruptcy Case"). This Court has jurisdiction in the instant adversary proceeding pursuant to 28 U.S.C § 1334 and because the issues raised in the action arise under Sections 547 and 550 of the Bankruptcy Code and relate to the Bankruptcy Case.[2]

3. Venue is proper under 28 U.S.C. § 1409.

4. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O). If this adversary proceeding is determined to be "noncore," Plaintiff consents to the entry of final orders or judgments by the bankruptcy judge.

### II. PARTIES

5. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 4 of the Complaint as though full set forth herein.

6. On May 13, 2021, Plaintiff was appointed as the Chapter 7 Trustee in the bankruptcy case filed by Moneyline Analytics, LLC (the "Debtor") and has served in that capacity since her appointment.

7. Upon information and belief, Defendant is a resident of Franklin County, Ohio who conducted business with the Debtor and was a member of the Debtor.

. . .

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

[2] On July 14, 2023, this Court entered an *Order Approving First Amendment to Stipulation to Approve Agreement to Toll Statute of Limitations and Statute of Repose With Robert Schuerger* [ECF No. 211] that extended the deadline for the Plaintiff to file a complaint against the Defendant until September 1, 2023.

8.	The true names, identities, or capacities, whether individual, corporate, political, associate or otherwise of any Doe and Roe Defendants are unknown to Plaintiff. Plaintiff therefore sues and Doe and Roe Defendants by fictitious names. Plaintiff is informed and does believe, and thereupon alleges, that: each of the Doe and Roe Defendants is responsible in some manner for the acts, actions and omissions herein referred to; each of the Doe and Roe Defendants has proximately caused general and special damages to Plaintiff as herein alleged; and Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of any said Doe and Roe Defendants when the same have been ascertained by Plaintiff, together with appropriate charging allegations.

### III.	GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

9.	Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 8 of the Complaint as though fully set forth herein.

10.	Upon information and belief, the Debtor was a business established ostensibly for the purpose of placing sports wagers on behalf of investors.

11.	Upon information and belief, persons investing in the Debtor were given a proportionate membership in the Debtor.

12.	Funds invested in the Debtor were diverted and utilized to pay the personal expenses of the Debtor's principal, Matthew Turnipseede ("Turnipseede"), or were lost in gambling wagers.

13.	Although the Debtor was losing money, investors were led to believe the Debtor was successful in its wagers.

14.	Because the Debtor was losing money on its wagers, and funds were diverted to pay the personal expenses, the assets of the Debtor perpetually exceeded the Debtor's liabilities, such that the Debtor was insolvent at all times.

15.	The funds of new investors were utilized to pay prior investors who requested distributions of their capital contribution and/or their fictitious profits.

16.	The Debtor was run as a Ponzi scheme, and was perpetually insolvent, relying on new investors to cover its losses.

-3-

17. Upon information and belief, prior to the Debtor's bankruptcy filing, Defendant was an investor and proportionate member in the Debtor.

18. The Defendant received multiple K1's for the Debtor, identifying the Defendant as a member of the Debtor.

19. The Defendant never contested any K1 he received from the Debtor.

20. On or about December 7, 2015, the Defendant made a $20,000 investment in the Debtor.

21. On or about January 14, 2016, the Defendant made a $74,498.00 investment in the Debtor.

22. On or about February 1, 2016, the Defendant made a $150,000 investment in the Debtor.

23. On or about June 29, 2018, the Defendant made a $100,000.00 investment in the Debtor.

24. In total, the Defendant invested $344,498.00 in the Debtor.

25. On or about December 15, 2017, the Debtor initiated a wire transfer in the amount of $170,000.00 from its Wells Fargo Bank Account to the Defendant's bank account (the "2017 Transfer").

26. On or about December 14, 2018, the Debtor initiated a wire transfer in the amount of $455,000.00 from its Wells Fargo Bank Account to the Defendant's bank account (the "2018 Transfer" and together with the 2017 Transfer, the "Transfers").

27. Upon information and belief, the Defendant received a gain of $280,502.00 (the "Net Gain") in excess of his investment in the Debtor.

28. On May 13, 2021 (the "Petition Date"), the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[3]

29. On May 13, 2021, Plaintiff was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 3].

---

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

-4-

30. On July 2, 2021, Plaintiff issued a Subpoena to the custodian of records for Wells Fargo Bank, N.A. (the "Wells Fargo Subpoena").

31. On December 1, 2021, Plaintiff issued a Subpoena (the "LaDuca Subpoena") to creditor Charles LaDuca ("LaDuca"), which sought records of the Debtor and Turnipseede that were obtained by LaDuca. The requested records included records of accountants, lawyers, and the casinos at which Turnipseede allegedly placed wagers on behalf of the Debtor.

32. Based on the records provided pursuant to the Wells Fargo Subpoena, the LaDuca Subpoena, and by the Debtor, Plaintiff has concluded that the Debtor was operating as a Ponzi scheme.

33. Specifically, based on the records obtained by the Plaintiff, the gambling records provided do not support the gains the Debtor reported to its investors, and show that the Debtor was on aggregate, losing money on its wagers.

34. Based upon bank statements and the Debtors own internal documents, the Debtor's liabilities exceeded its assets at the time of the Transfers.

35. Based on the Debtor's financial statements, the Debtor owed its investors a total of over $5,000,000. At the time of the Transfers, the Debtor did not have $5,000,000, and in fact had significantly less than that sum.

36. Consequently, the Debtor was insolvent on the date that the Transfers were made or was rendered insolvent as a result of the Transfers.

37. Despite the Debtor's extensive losses and indisputable insolvency, the Debtor, through Turnipseede, continued to represent to its investors that it was realizing "double digit returns."

38. Upon information and belief, on or about August 10, 2022, Turnipseede was indicted by a federal grand jury in the Northern District of Ohio in connection with his operation of the Debtor and other enterprises.

39. Upon information and belief, the indictment of Turnipseede (the "Indictment") alleges that Turnipseede operated the Debtor and other companies as ponzi schemes and charges Turnipseede with various counts of wire fraud and mail fraud.

40. Upon information and belief, at all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor (each as a "Predicate Creditor").

**Creditor(s) of the Debtor:**

| Creditor | Scheduled as Undisputed by Debtor | Proof of Claim No. | Amount |
|---|---|---|---|
| Billigmeier, Eric | Y | 52-1 | $31,977.00 |
| Cannon, Kathleen | Y | 14-1 | $22,107.00 |

41. Multiple badges of fraud are present with respect to the Transfers to Defendant, including the following:

    a. The Debtor was insolvent at the time of the Transfers;

    b. The Debtor had incurred and was continuing to incur, substantial debt at the time it made the Transfers to Defendant;

    c. The Debtor, through its principal, Turnipseede, made false statements and falsified financial statements to cover up its fraudulent actions;

    d. The Debtor made the Transfers described herein for less than reasonably equivalent value as the Transfers was made to satisfy a claim for profits that were fictional and never existed;

    e. The chronology of events and the timing of the Transfers indicate the intent to defraud. The Debtor would use funds recently deposited from new or later investors to pay off exiting obligations owed to prior clients and third parties;

42. The Debtor was aware of its investors' claims against the company and that the Debtor was incapable of paying those claims.

### IV. FIRST CLAIM FOR RELIEF

**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. 544(b) and NRS Chapter 112.180(1)(a) Against Defendant)**

43. Plaintiff incorporates and realleges paragraphs 1 through 42, as though fully set forth herein.

44. The Transfers constitute transfers within the meaning of 11 U.S.C. § 101(54).

45. At the time of the filing of the Debtor's bankruptcy petition, the Predicate Creditor(s) held an allowable unsecured claim under 11 U.S.C. § 502.

46. The Transfers constitute transfers of property by the Debtor or obligations incurred by the Debtor that are voidable by that kind of creditor described in 11 U.S.C. § 544 (a)(1); that kind of creditor described in 11 U.S.C. § 544 (a)(2); or that bona fide purchaser described in 11 U.S.C. § 544 (a)(3).

47. Because the Transfers were made in furtherance of a Ponzi Scheme, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor.

48. This claim is being made within four years of the date the Transfers were made.

49. The Transfers are avoidable pursuant to 11 U.S.C. 544(b) and NRS Chapter 112.180(1)(a) and the Plaintiff is entitled to recover the Net Gain for the benefit of the Debtor's creditors.

### V.   SECOND CLAIM FOR RELIEF

**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. 544(b) and NRS Chapter 112.180(1)(b) against Defendant)**

50. Plaintiff incorporates and realleges paragraphs 1 through 49, as though fully set forth herein.

51. The Transfers constitute transfers within the meaning of 11 U.S.C. § 101(54).

52. At the time of the filing of the Debtor's bankruptcy petition, the Predicate Creditor(s) held an allowable unsecured claim under 11 U.S.C. § 502.

53. The Transfers constitute transfers of property by the Debtor or obligations incurred by the Debtor that are voidable by that kind of creditor described in 11 U.S.C. § 544 (a)(1); that kind of creditor described in 11 U.S.C. § 544 (a)(2); or that bona fide purchaser described in 11 U.S.C. § 544 (a)(3).

54. Under applicable Nevada Law, the Transfers constitute the transfer of interests of the Debtor in property, or an obligation incurred by the Debtor, during the relevant statutory

-7-

period, and the Debtor made the Transfers without receiving a reasonably equivalent value in exchange for the Transfers.

55. Specifically, the Debtor received no reasonably equivalent value in exchange for the Transfers to the extent the Transfers represent fictitious profits.

56. As stated above, the Debtor was insolvent at the time of the Transfers, because, as a Ponzi Scheme, the Debtor's liabilities always exceeded its assets at any given time, including at the time of the Transfers.

57. Plaintiff is entitled to avoid and recover for the bankruptcy estate the Net Gain as would a hypothetical lien creditor pursuant to the bankruptcy code.

58. The Net Gain avoidable and can be recovered by Plaintiff pursuant to 11 U.S.C. § 544(b) and N.R.S. Chapter 112.

59. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

## VI.    THIRD CLAIM FOR RELIEF

**(Recovery of Fraudulent Transfer Pursuant to 11 U.S.C. § 550 Against Defendant)**

60. Plaintiff incorporates and realleges paragraphs 1 through 59, as though fully set forth herein.

61. The Transfers are avoidable transfers pursuant to 11 U.S.C. § 544(b).

62. Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under Section 544 of the Bankruptcy Code, Plaintiff is entitled to recover for the benefit of the estate the property transferred, or the value of the property transferred from the initial transferee of such transfers, or the entity for whose benefit the transfer was made.

63. Defendant was the initial transferee of the Transfers, or in the alternative, Defendant was either the entity for whose benefit the Transfers were made or was the immediate or mediate transferee of the initial transferee receiving the Transfers.

64. To the extent it is determined that Defendant is an immediate or mediate transferee of the Transfers, Defendant did not take for value, in good faith, or without knowledge of the voidability of the Transfers.

-8-

65. Plaintiff is entitled to a judgment under 11 U.S.C. § 550(a), recovering the Transfers, or the value thereof, for the benefit of the Debtor's bankruptcy estate.

## VII.     FOURTH CLAIM FOR RELIEF

**(Declaratory Relief Pursuant to N.R.S. §§ 30.010-160 and N.R.S. § 86.343 Against Defendant)**

66. Plaintiff incorporates and realleges paragraphs 1 through 65, as though fully set forth herein.

67. The Debtor paid the 2018 Transfer to Defendant as an alleged return of capital and/or distribution of fictitious profits.

68. The Debtor was insolvent at the time of the 2018 Transfer, as its liabilities far exceeded its assets.

69. Defendant was a purported member of the Debtor at the time of the 2018 Transfer.

70. N.R.S. § 86.343 provides that no distribution shall be made to a Nevada limited liability company member where (a) the company would not be able to pay its debts as they came due in the usual course of business; or (b) the company's total assets would be less than the sum of its total liabilities.

71. The Debtor was unable to pay its debts as they came due in the usual course of business at the time of the 2018 Transfer.

72. The Debtor's total liabilities at the time of the 2018 Transfer were in excess of $5 million and its total assets were significantly less than its total liabilities at the time of the Transfers.

73. Consequently, the Debtor's total assets were less than the sum of its total liabilities at the time of the 2018 Transfer to Defendant.

74. An actual, ripe, and justiciable controversy has arisen and now exists between Plaintiff and Defendant regarding the validity of the distribution of the 2018 Transfer to Defendant, and whether Defendant received an illegal distribution in violation of N.R.S. § 86.343.

. . .

. . .

75. Plaintiff requests a judicial determination pursuant to N.R.S. §§ 30.010-160, inclusive, that the 2018 Transfer to Defendant constituted an illegal dividend, distribution, or payment to a member of a Nevada limited liability company pursuant to N.R.S. § 86.343.

76. Plaintiff additionally requests a judicial determination declaring that the 2018 Transfer remains property of the Debtor's bankruptcy estate and must be returned to the Debtor's bankruptcy estate for the benefit of the Debtor's creditors.

77. Plaintiff desires the foregoing judicial determinations, as such relief is necessary and appropriate at this time in order to resolve the adverse interests of Plaintiff and Defendant.

78. Plaintiff reserves the right to supplement this Complaint to plead additional claims for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. With respect to the first claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Net Gain for the benefit of Debtor's bankruptcy estate as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and N.R.S. Chapter 112.180(1)(a).

2. With respect to the second claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Net Gain for the benefit of Debtor's bankruptcy estate as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and N.R.S. Chapter 112.180(1)(b).

3. With respect to the third claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Net Gain for the benefit of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 550.

4. With respect to the fourth claim for relief, Plaintiff respectfully requests that the Court provide a judicial determination pursuant to N.R.S. §§ 30.010-160, inclusive, that the 2018 Transfer to Defendant constituted an illegal dividend, distribution, or payment to a member of a Nevada limited liability company pursuant to N.R.S. § 86.343, and that the 2018 Transfer remains property of the Debtor's bankruptcy estate and must be returned to the Debtor's bankruptcy estate.

. . .

-10-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

5.  For attorneys' fees and costs of suit in an amount to be determined in this Adversary Proceeding.

6.  For such other relief as this Court may deem just and proper.

Dated this 31st day of August, 2023.

**HOUMAND LAW FIRM, LTD.**

By: /s/ Bradley G. Sims
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:  702/720-3370
Facsimile:  702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

-11-